# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **BEVERLY M. LEE,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** ) | **CAUSE NO. 1:10-CV-00310** |

## OPINION AND ORDER

Plaintiff Beverly Lee appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion.

## I. PROCEDURAL HISTORY

Lee applied for DIB and SSI on September 27, 2006, alleging that she became disabled as of March 31, 2006. (Tr. 115-17, 121-24.) The Commissioner denied her application initially and upon reconsideration, and Lee requested an administrative hearing. (Tr. 64-74.) A hearing was conducted by Administrative Law Judge ("ALJ") Terry Miller on May 6, 2009, at which Lee (who was represented by counsel), her husband, and a vocational expert ("VE") testified.

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

(Tr. 11-61.)

On August 10, 2009, the ALJ rendered an unfavorable decision to Lee, concluding that she was not disabled because she could perform her past relevant work as a general laborer or production assembler despite the limitations caused by her impairments. (Tr. 606-17.) The Appeals Council denied Lee's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5, 10, 246-70.)

Lee filed a complaint with this Court on September 3, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.) In her appeal, Lee alleges three flaws with the Commissioner's final decision. Specifically, Lee claims that the ALJ (1) failed to incorporate his finding that she had moderate difficulties in maintaining concentration, persistence, or pace into the residual functional capacity ("RFC") and the hypothetical posed to the VE;[2] (2) improperly evaluated the opinion of her treating psychiatrist, Dr. Flueckiger; and (3) improperly discounted the credibility of her symptom testimony. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 11-20.)

## II. FACTUAL BACKGROUND[3]

### *A. Background*

At the time of the ALJ's decision, Lee was thirty-eight years old; had a high school education and had attended two years of college; and possessed work experience as a certified

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

[3] In the interest of brevity, this Opinion recounts only the portions of the 617-page administrative record necessary to the decision.

2

nurse's assistant, laborer, and supervisor of a group home. (Tr. 115, 199, 240.) Lee alleges that she became disabled as of March 31, 2006, due to major depressive disorder and bipolar I disorder. (Opening Br. 2.)

### B. *Lee's Testimony at the Hearing*

At the hearing, Lee testified that she lives with four children (ages 11, 17, 18, and 18) and that she works ten to fifteen hours a week as a clerk at a liquor store. (Tr. 18, 19.) The children and her husband (from whom she is currently separated) help complete the household tasks, such as cooking, cleaning, and paying the bills. (Tr. 39-40, 45, 53.) Lee stated that she cannot work full-time because she gets easily overwhelmed, and at least three or four days a week she "just can't get out of bed." (Tr. 22, 27.) She further reported that she has problems with her concentration and memory and in dealing with people. (Tr. 27-29.) She confided that she goes out as little as possible because she feels uncomfortable in public and easily gets anxious. (Tr. 31, 44.)

Lee reported that she sees a mental health therapist once or twice a month and a psychiatrist every four to six weeks. (Tr. 34-35.) She admitted that she is not always compliant with obtaining and taking her medications, in part, due to her financial constraints. (Tr. 35-36.)

### C. *Summary of the Relevant Medical Evidence*

On September 11, 2006, Lee underwent a mental status evaluation by Mary Kadlec, Ph.D. (Tr. 363-68.) She noted that Lee had been treated earlier that year by Dr. Shao for depression and bipolar disorder, and that she had also received treatment for these disorders in 1997. (Tr. 363.) Upon examination, Lee exhibited fluctuating alertness, blunted affect,

3

depressed mood, fair eye contact, slow speech, mildly-impaired memory, psychomotor retardation, mild conceptual disorganization, worried to irritable thought content, indifferent attitude, a poor attention span, and mild suicidal and homicidal ideation. (Tr. 364.) Lee was assigned a diagnosis of major depressive disorder, single episode, moderate, chronic; and bipolar I disorder. (Tr. 363.)

Lee returned to Dr. Kadlec one week later, reporting that she felt depressed and overwhelmed. (Tr. 361.) Dr. Kadlec stressed to Lee the importance of medication compliance. (Tr. 361.) Lee missed her next two scheduled appointments. (Tr. 359-60.)

On January 8, 2007, Dr. J. Gange, a state agency psychologist, reviewed Lee's record and concluded that she did not have a severe mental impairment. (Tr. 369-85.) A second state agency psychologist later affirmed Dr. Gange's opinion. (Tr. 383.)

In July 2007, Lee was evaluated by a mental health clinician at Psychiatric Care, Inc. (Tr. 392-96.) On examination, Lee exhibited fidgety behavior with fair eye contact; tangential thought flow; dysphoric mood; flat and blunted affect; and fair insight, judgment, and memory. (Tr. 395.) She had difficulties with self-esteem; problems with adjustment, vocation, and concentration; conflict with relationships; anxiety; impaired thinking; and a fair capacity for daily living tasks. (Tr. 396.) Lee was diagnosed with bipolar disorder and was assigned a current Global Assessment of Functioning ("GAF") score of 35 with a past-year GAF score of 38.[4] Lee visited the mental health clinician again in October and November 2007. (Tr. 386, 388.)

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000). A GAF score of 31 to 40 reflects some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoids friends, neglects family, and is unable to work).

4

On August 30, 2007, Lee visited Dr. Bryan Flueckiger, a psychiatrist, and he adjusted her medications. (Tr. 389.) He reflected a diagnosis of bipolar, depressed, without psychotic features. (Tr. 389.)

Lee returned to Dr. Flueckiger in June 2008, and he noted that she had been without her medications since January. (Tr. 527.) Nevertheless, she reported that she was "doing okay". (Tr. 527.) Dr. Flueckiger's impression was that Lee was "[d]istressed" and "functioning marginally". (Tr. 527.)

Lee visited Dr. Flueckiger three months later, reporting that her family doctor had restarted her psychiatric medications and that her mood had improved accordingly. (Tr. 526.) Dr. Flueckiger found that Lee was depressed and that she met the criteria for social phobia. (Tr. 526.) He continued her medications, and she agreed to resume mental health counseling. (Tr. 526.)

In December 2008, Dr. Flueckiger completed a medical source statement on Lee's behalf. (Tr. 535.) He reflected a diagnosis of bipolar disorder and provisionally a personality disorder NOS, rating her current GAF at 60.[5] (Tr. 530.) He reported her symptoms as mood disturbance, emotional lability, decreased energy, anxiety, hostility, irritability, feelings of guilt or worthlessness, social withdrawal, pervasive loss of interest, and suicidal ideation. (Tr. 530.) He noted that Lee had not taken her medications regularly or consistently attended counseling, and that her "motivation for improvement [was] in question". (Tr. 531.) He acknowledged that Lee would miss about four days of work per month due to her impairments, but nevertheless thought

---

[5] A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). AMERICAN PSYCHIATRIC ASSOCIATION, *supra* n.4.

that returning to a structured work setting would benefit her. (Tr. 532.) He assigned her a "poor" prognosis. (Tr. 532.)

Lee attended mental health counseling at Psychiatric Care, Inc., approximately six times from January to May 2009. (Tr. 594-96, 599-602.) She reported medication noncompliance, decreased energy, depression, racing thoughts, and abuse of alcohol and marijuana. (Tr. 599-602.) Her counselor noted that her mood was moderately depressed and that her insight and judgment were poor. (Tr. 599.)

On March 10, 2009, Lee visited Dr. McGee of Psychiatric Care, Inc., reporting that she was not doing well and did not feel like herself. (Tr. 596.) Dr. McGee thought that Lee's insight and judgment were poor to fair and that she had difficulty achieving mood stability due to her medication noncompliance. (Tr. 596.)

On April 30, 2009, Dr. Flueckiger explained in a letter to Lee's attorney that bipolar disorder can affect an individual's compliance with medications and therapy. (Tr. 588.) He emphasized, however, that the degree to which the disorder affects an individual's treatment compliance is highly variable. (Tr. 588.) As a result, he stated that it was impossible to opine that Lee's noncompliance with treatment was primarily attributable to her illness. (Tr. 588.)

Lee returned to Dr. McGee in May 2009, reporting that she felt stressed out and tense. (Tr. 592.) Dr. McGee noted that Lee appeared depressed, angry, and tearful, and that she exhibited pressured speech and fair attention and concentration. (Tr. 592.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[6] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On August 10, 2009, the ALJ rendered his decision. (Tr. 606-17.) He found at step one of the five-step analysis that Lee had not engaged in substantial gainful activity since her alleged onset date. (Tr. 608.) At step two, the ALJ concluded that Lee had the following severe impairments: depression/bipolar disorder; personality disorder; and history of alcohol and marijuana use. (Tr. 608.)

At step three, the ALJ determined that Lee's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 609.) Before proceeding to step four, the ALJ

---

[6] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

8

determined that Lee's testimony of debilitating limitations was not entirely consistent with or fully supported by the medical and other evidence of record, nor by her course of conduct. (Tr. 615.) He then assigned her the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to unskilled work; can be around other employees, co-workers and supervisors but can only have brief and occasional conversations and interpersonal interactions with these individuals; and must avoid work with the general public.

(Tr. 612.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that despite the limitations caused by her impairments Lee could perform her past relevant work as a general laborer or production assembler, both as she performed it and as it is generally performed in the economy. (Tr. 615.) Therefore, Lee's claims for DIB and SSI were denied. (Tr. 617.)

### C. The ALJ Erred By Failing to Incorporate His Step Three Finding That Lee Had Moderate Deficits in Maintaining Concentration, Persistence, or Pace into His Questioning of the VE at Step Five

Lee argues that the ALJ erred by failing to incorporate his finding at step three that she had moderate deficits in maintaining concentration, persistence, or pace into the RFC and his questioning of the VE at step five. Lee's argument ultimately has merit and warrants a remand of the Commissioner's final decision.

To explain, in determining the severity of a claimant's mental impairment, the ALJ must address a claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920(a)(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit

9

Court of Appeals has stated that the ALJ must then "incorporate" these limitations into the hypothetical questions posed to the VE at step five. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) (holding that the ALJ erred when neither his RFC nor his hypothetical question to the VE "[took] into account" his earlier finding that the claimant had deficiencies in concentration, persistence, or pace); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Stated more broadly, "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate *all* relevant limitations from which the claimant suffers." *Kasarsky*, 335 F.3d at 543 (emphasis added); *see also Stewart*, 2009 WL 859830, at *3 ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.").

Here, at step three of his analysis, the ALJ found that Lee had moderate deficiencies in maintaining concentration, persistence, or pace.[7] (Tr. 611.) Yet, the RFC and the hypothetical question posed by the ALJ to the VE did not expressly incorporate these findings, instead limiting Lee to "unskilled work". (Tr. 612.) The Commissioner argues that the ALJ's limitation adequately accommodates Lee's mental health deficits. Lee disagrees; she contends that the ALJ's failure to incorporate her moderate limitations in concentration, persistence, or pace into the hypothetical posed to the VE, left the VE with an incomplete picture of her actual limitations.

"[A]n [ALJ] is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately

---

[7] The ALJ also found at step three that Lee had moderate difficulties in social functioning. (Tr. 611.) Lee, however, does not challenge the manner in which the ALJ incorporated her social functioning limitations into the RFC. (Tr. 612 ("[T]he claimant . . . can be around other employees, co-workers and supervisors but can only have brief and occasional conversations and interpersonal interactions with these individuals; and must avoid work with the general public.").)

10

supports that conclusion." *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 567816, at *4 (W.D. Wis. Mar. 2, 2005). That is, courts have held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE. *See, e.g.*, *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (concluding that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work."); *Howard v. Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001) (concluding that the ALJ adequately captured the claimant's deficiencies in concentration, persistence, or pace in his RFC that limited the claimant to simple, repetitive tasks, in part because the state agency psychologist concluded in his functional capacity assessment that the claimant could sustain sufficient concentration and attention to perform simple, repetitive, and routine activity); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ's limitation of plaintiff to work that is "routine and low stress" as recommended by one medical source of record adequately accounted for the fact that plaintiff often suffered from deficiencies in concentration, persistence, or pace).

This, however, is *not* a case where the ALJ relied upon a medical source's translation of Lee's moderate deficits in concentration, persistence, or pace into a specific RFC finding. To explain, Dr. Flueckiger, Lee's treating psychiatrist, thought that Lee's deficits in maintaining concentration, persistence, or pace over an extended period of time would allow her to perform work activity satisfactorily only "some of the time" and that she would miss about four days of work per month, an absenteeism rate which the VE stated would preclude competitive

11

employment. (Tr. 44-45, 532, 534.) As to the state agency psychologists, they simply opined that Lee did not have a severe mental impairment and thus never translated their findings into a specific RFC. (Tr. 369.) The ALJ, however, ultimately concluded that Lee's mental deficits were *more severe* than those articulated by the state agency physicians, finding that she had moderate difficulties in maintaining concentration, persistence, or pace, and social functioning. (Tr. 611.)

Thus, the Court in its review of the record did not note any medical source opinion that translated Lee's moderate deficits in maintaining concentration, persistence, or pace into an RFC of "unskilled work"; therefore, the ALJ obviously created this limitation of his own accord. The Seventh Circuit Court of Appeals, however, has found a hypothetical flawed where it "purported to tell the vocational expert what types of work [the claimant] could perform rather than setting forth [the claimant's] limitations and allowing the expert to conclude on his own what types of work [the claimant] could perform." *Young v. Barnhart*, 362 F.3d 995, 1004 n.4 (7th Cir. 2004); *see also Stewart*, 561 F.3d at 2009 WL 859830, at 684; *Everroad v. Astrue*, No. 4:06-cv-100, 2007 WL 2363375, at *8 (S.D. Ind. Aug. 10, 2007) ("By using conclusory language to describe [the claimant's] limitations, the ALJ did not allow the expert to make a reliable determination about what work the claimant could perform.").

In that vein, in *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), the Seventh Circuit Court of Appeals stated that in most cases, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." (collecting cases). The Court explained that "[t]he ability to stick with a given task over a sustained period

12

is *not* the same as the ability to learn how to do tasks of a given complexity." *Id.* (emphasis added) (collecting cases). Accordingly, the Court concluded that in most cases, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id.* at 620-21.

As emphasized *supra*, when an ALJ relies on a VE's testimony, the hypothetical questions based on the claimant's RFC must incorporate *all* of the claimant's limitations that are supported by medical evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Consequently, this case will be remanded to the Commissioner so that the ALJ may properly incorporate Lee's moderate difficulties in maintaining concentration, persistence, or pace, together with the other mental limitations that he articulated at step three, into his analysis at step five.[8] *See Kasarsky*, 335 F.3d at 544.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Lee and against the Commissioner.

SO ORDERED. Enter for this 26th day of July, 2011.

S/Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge

---

[8] Because a remand is warranted on Lee's first argument, the Court does not need to reach her remaining two arguments—that the ALJ improperly evaluated Dr. Flueckiger's opinion and her symptom testimony.